# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDICE RONEY,<br>           Plaintiff,<br><br>           v.<br><br>ALLEGHENY INTERMEDIATE UNIT,<br>           Defendant. | )<br>)<br>)<br>) 2:12-cv-832<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31), filed by the Allegheny Intermediate Unit ("AIU"), with brief in support. Plaintiff Candice Roney ("Roney")[1] filed a brief in opposition to the motion. The parties have thoroughly developed their respective positions regarding the Concise Statements of Material Facts ("CSMF") and submitted numerous exhibits. The motion is ripe for disposition.

Factual and Procedural Background

Plaintiff originally asserted a pregnancy discrimination claim related to her termination from employment in December 2010. She has now abandoned that theory and pursues only a "failure to rehire" theory. (Plaintiff's Brief at 1 n.1).

The AIU is a political subdivision of Pennsylvania which provides educational services. In August 2010, Roney applied for a position as a full-time paraprofessional. During the process, Roney met with two human resources officials, Kate Mitchell ("Mitchell") and Victoria Dunlop ("Dunlop"). Dunlop reported to Mitchell, who reported to Michael Brinkos ("Brinkos"), the Assistant Executive Director for Operation and Educational Services. Roney was informed

---

[1] Plaintiff got married after this case was filed and her name is now Candice Sellman. For clarity and consistency, she will continue to be referred to as "Roney."

that several security clearances were required for employment (Act 114 FBI clearance, Act 34 criminal background check and Act 151 child abuse clearance). Roney provided the Act 114 and Act 34 clearances, and commenced provisional employment for AIU on September 16, 2010, with the understanding that she would obtain her Act 151 clearance within ninety (90) days.

Roney was first assigned as a Personal Care Assistant for a student at Edgewood Elementary. After that student left the school district, Roney was transferred on October 13, 2010 to the Sunrise School as a day-to-day substitute, reporting to Principal Lucy McDonough ("McDonough"). Roney was not assigned to a specific student or class at Sunrise. Rather, she was treated as an extra person and was assigned to assist in different areas each day when another aide was unavailable or called off work. One position involved working with children who had multiple, severe disabilities (the "MSD" or "MDS" position).[2] After one day, Roney came to McDonough in tears and told her that she was unable to work in MSD, physically or emotionally. Children in the MSD room needed to be lifted, carried and sometimes diaper changed. Roney had miscarried four months earlier; was pregnant again; and was experiencing complications with her pregnancy.

Roney told McDonough about her pregnancy complications and inability to lift. McDonough responded: "We'll just have to figure out where to put you." In her deposition, Roney agreed that McDonough rearranged the schedule to accommodate her limitation, but testified that it was an inconvenience: "[She] did it but she wasn't happy about it. You could tell." Roney Dep. at 87. On December 6, 2010, Mitchell contacted Roney regarding her Act 151 clearance. Roney replied that she thought she had sent away for the clearance in September, but inadvertently had not, and was mailing the paperwork out that day. Roney noted: "I will fax to

---

[2] The parties appear to use the terms "MSD" and "MDS" interchangeably. The term(s) refer to multi-disability student.

you asap of receiving it … I am very sorry and I know it's a big inconvenience." The next day, Mitchell informed Roney that she would not be able to work until the child abuse clearance was obtained. On December 16, 2010 Roney's employment was terminated.[3] However, she was given the option to reapply after she obtained her Act 151 clearance.

Roney obtained her clearance shortly thereafter. On December 22, 2010 Roney told Mitchell by phone that she had received the clearance and learned that her prior position had not been held for her. On December 29, 2010 Roney emailed Mitchell: "I'm going to try to get to a fax machine as soon as I can.[4] How do I apply for a Sunrise position and when can I start?" Mitchell replied: "You would need to contact Lucy McDonough to see what positions she has open currently. If there are open positions, and you are interested, an email to her and Victoria Dunlop would be enough for an application since you have a file with us." Roney then immediately emailed McDonough that she had received her clearance; and to ask "if you have any positions open currently for me to reapply for so I can return."

McDonough replied on January 3, 2011(copying Dunlop): "All I have open is an MDS position[5] and we discussed and you were not interested. I also think someone has been offered the position. I am copying Victoria if she knows of anything else for you." Roney responded (copying Dunlop): "I would take a MDS position but as of now with me being pregnant I am not able to lift, are there any sub positions available what I was doing before I took the leave?" In other words, Roney sought a position as a day-to-day substitute.

---

[3] The termination of employment is no longer at issue.
[4] Roney never provided a copy of her Act 151 clearance to AIU.
[5] Roney attempts to create a genuine issue of material fact by pointing to Mitchell's testimony that McDonough "had a couple positions [open]." Mitchell's actual testimony is as follows: "Q: Tell me what you recall about that phone call. A: That she only had a couple, and I don't remember the specifics, but I don't know that --- I'm not really sure what --- Just that she had a couple positions. But she would have worked with Victoria Dunlop on, you know, staffing those positions." Mitchell Deposition at 42-43. Upon further questioning, Mitchell reiterated that she did not remember the specific positions and did not really have a recollection of specifics. *Id*. at 44.

3

McDonough was not involved in hiring substitutes and assumed that Dunlop would respond to Roney. Dunlop testified that she did not respond because Roney had never sent in the Act 151 clearance. Dunlop Deposition at 50-51. Dunlop believed that her boss, Mitchell, had responsibility to resolve the clearance issue and it would have been the decision of Mitchell and/or Brinkos to set up an appointment. Dunlop did not call Roney and tell her to bring in the child abuse clearance form so that she could start the new job application process. *Id*. In sum, it appears that nobody from the AIU responded to Roney's January 3, 2011 response email.

Roney made no further efforts to contact the AIU as to employment. Roney Deposition at 78-80.[6] Roney had no further contact whatsoever with McDonough, Mitchell or Brinkos. On January 19, 27, and February 3, 2011, the AIU posted announcements for paraprofessional positions at the Sunrise School. Roney saw the postings but did not apply. On January 18, 2011, McDonough sent an email to Dunlop to inquire whether Roney had applied for any other positions, and noted: "I was just informed of a negative verbal interaction in the community with one of our students (His mother called because she thought [Roney] was still working here.)" Dunlop responded: "I have not received any inquiries from her about positions."

Roney believed her pregnancy was the reason that she was not rehired "[b]ecause I wasn't able to do some of the things that other people that they could hire could do that aren't pregnant." *Id*. at 89. In her deposition, Roney was asked whether she had any facts to support her belief that AIU did not rehire her due to her pregnancy: "Q: Okay. So your belief is just based on that, your belief? A: Right." Roney Deposition at 89-91. Nobody at AIU told her that the decision was due to her pregnancy or stated in a document that she was not rehired because of pregnancy. *Id*.

---

[6] Roney did ask her mother-in-law, who was employed by AIU, who told her about a day-to-day substitute position available at Sunrise. Roney made no effort to apply for this position. Roney Deposition at 79.

4

Roney filed her original Complaint in this case in June 2012. It is undisputed that Roney exhausted her administrative remedies by filing charges with the EEOC and PHRC in August 2011.

Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Discussion

Roney asserts claims of pregnancy discrimination in violation of Title VII, as modified by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and the Pennsylvania Human Relations Act ("PHRA"). Title VII and PHRA claims apply parallel legal standards and will be analyzed together. An employer engages in pregnancy discrimination whenever the employee's

pregnancy or related medical condition is a motivating factor for an adverse employment decision. *In re Carnegie Ctr. Assoc.*, 129 F.3d 290, 294 (3d Cir. 1997). An employer is not required to give preferential treatment to pregnant employees. Instead, employers must treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work. *Id*. at 297.

Discrimination claims are analyzed under the familiar McDonnell-Douglas burden-shifting framework. The burden to establish a prima facie case is flexible, not onerous, and often overlaps with the pretext analysis. A plaintiff must establish that: (1) the employer knew she was pregnant; (2) she was qualified for the position; (3) she suffered an adverse employment action[7]; and (4) there is some nexus between her pregnancy and the adverse employment termination that would permit a fact-finder to infer unlawful discrimination. *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 365-66 (3d Cir. 2008). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Then the burden shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination.

Defendant contends that Roney has failed to make out a prima facie case and has failed to show that its asserted reasons were pretextual. Although the AIU's motion and brief focused primarily on the "termination of employment" theory (which had not yet been abandoned at that juncture), the AIU also asserts that there is no evidence that Roney's pregnancy was a factor in the rehire decision. In essence, the AIU contends that Roney was not rehired because she never provided her Act 151 clearance to the AIU and never inquired about or actually applied for any of the posted positions.

---

[7] A failure to rehire can constitute an adverse employment action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003).

6

Plaintiff contends that there are genuine issues of material fact which defeat summary judgment. Roney contends that a reasonable jury could disbelieve that she was not rehired because she had not physically provided an Act 151 clearance to AIU,[8] in that she was never told that she had to physically provide the clearance and AIU policy allows the clearance to be supplied at hiring or, occasionally, during a 30-day waiver period. Roney also alleges an inconsistency and contradiction as to whether the AIU's reason was a lack of a clearance or the lack of available positions. Finally, Plaintiff contends that a jury could attribute anti-pregnancy animus to McDonough based on Roney's belief that McDonough was not happy about accommodating Roney's lifting restrictions during the October-December timeframe and could find that McDonough lied to Roney in saying that no positions – other than the MSD position – were available.

The Court will assume, without deciding, that Roney has established a prima facie case. However, the Court concludes that no reasonable jury – viewing the facts and inferences in the light most favorable to Roney – could conclude that the AIU refused to rehire her due to pregnancy discrimination. There are no genuine disputes of material fact as to pretext. Rather, the very skillful lawyer for Plaintiff has attempted to exaggerate and embellish immaterial inconsistencies in the deposition testimony.

The articulated, non-discriminatory reasons that AIU did not rehire Roney are complementary, not contradictory. Roney never proved that she had received her Act 151 clearance <u>and</u> Roney never applied for an available position. It is undisputed that Roney was terminated for her failure to obtain the Act 151 clearance, and that Mitchell, the AIU employee

---

[8] Plaintiff bases this argument on the deposition testimony of Brinkos, who first stated that he had no idea why Roney was not rehired and stated that Mitchell was the person with such knowledge. (Dep. At 46). Soon after, Brinkos testified that "Roney was not rehired because we did not have her clearances." (Dep. At 47). Brinkos further explained that if AIU had the clearance "in hand" it would have considered rehiring Roney. *Id*.

7

responsible for resolving that issue, never received the proper clearance paperwork from Roney.[9] At most, the record reflects some administrative confusion between Dunlop and Mitchell, but there is no evidentiary basis for a jury to conclude that AIU's position was a pretext for pregnancy discrimination.

In addition, it is undisputed that the only position for which Roney ever sought to be rehired was a "sub position" on January 3, 2011, similar to "what [she] was doing before [she] took the leave." After the January 3rd email, Roney made no further efforts to contact anyone or to otherwise seek employment at AIU, even though she saw the job postings. Roney Deposition at 78-80. AIU did not have a legal duty to give Roney preferential treatment by hiring her for a job for which she did not apply. *In re Carnegie Ctr. Assoc.*, 129 F.3d at 297.

The allegation of discriminatory animus also fails. There is no evidence of anti-pregnancy animus by Dunlop, Mitchell or Brinkos. The only "evidence" of such animus by McDonough is Roney's own speculation. "A plaintiff's personal belief that the real reason for the job action was discriminatory animus does not create a genuine issue of material fact." *Dellapenna v. Tredyffrin/Easttown School Dist.*, 2011 WL 130156 at *8 (E.D. Pa. 2011) (*citing Waggoner v. Garland*, 987 F.2d 1160, 1164 (5th Cir.1993)). "Subjective beliefs, without more, are not sufficient to defeat summary judgment, especially where the plaintiff does not deny the conduct relied upon by the employer for the job action." *Id*. In *Ekhato v. Rite Aid Corp.*---Fed.Appx. ----, 2013 WL 3031953 at *2-3 (3d Cir. June 19, 2013) (non-precedential), the United States Court of Appeals for the Third Circuit recently explained:

> Ekhato's subjective belief that the decision to terminate her employment was discriminatory is insufficient. *See, e.g., Jones v.. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999) (finding that beliefs without factual support are

---

[9] Even if AIU policy provided for occasional waivers of the requirement to provide the clearance in advance, Plaintiff has failed to show that such a waiver would have been granted to a person (like Roney) who had been fired for failing to provide that clearance.

> insufficient to show a pretext for discrimination); *see also Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) ("[M]ere personal belief, conjecture[,] and speculation are insufficient to support an inference of ... discrimination." (internal quotation marks omitted)); *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) (explaining that conclusory allegations without evidentiary support are insufficient). The lack of evidence raising a genuine fact dispute material to determining pretext, and the lack of evidence in the record sufficient to support a finding of pretext, made summary judgment proper.

Roney speculated that McDonough was not happy about accommodating her lifting restrictions. Such speculation is contradicted by the actual evidentiary record. Roney admitted that McDonough did, in fact, respond: "We'll just have to figure out where to put you" and did, in fact, accommodate her restrictions. Roney Deposition at 51.[10] Indeed, in her deposition, Roney confirmed that she had no facts to support her belief that AIU did not rehire her due to her pregnancy. Roney Deposition at 89-91. In sum, no reasonable jury could conclude that the failure to rehire Roney was due to discrimination on the basis of her pregnancy.[11]

Conclusion

In accordance with the foregoing, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31) will be **GRANTED**.

An appropriate Order follows.

McVerry, J.

---

[10] Similarly, there is no evidence that McDonough lied about the lack of open positions on January 3, 2011. The only openings Plaintiff cites occurred several weeks later.

[11] The Court need not reach Defendant's argument that Roney failed to mitigate her damages.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDICE RONEY,<br>        Plaintiff,<br><br>        v.<br><br>ALLEGHENY INTERMEDIATE UNIT,<br>        Defendant. | )<br>)<br>)<br>)  2:12-cv-832<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 5th day of August, 2013 upon consideration of the foregoing, it is hereby

**ORDERED**, **ADJUDGED**, AND **DECREED** that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31) is **GRANTED**.

The clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    **Samuel J. Cordes, Esquire**
        Email: scordes@cordeslawfirm.com
        **John E. Black , III, Esquire**
        Email: jblack@cordeslawfirm.com

        **John W. Smart, Esquire**
        Email: jsmart@andrewsandprice.com